IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| BRUCE NOLAN, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13-cv-00016 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | By: Joel C. Hoppe |
|     Defendant. | ) |     United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Bruce Nolan brought this action for review of the Commissioner of Social Security's (the "Commissioner") decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act (the "Act") "), 42 U.S.C. §§ 1381–1383f. On appeal, Nolan argues that the Commissioner erred in weighing the opinions of examining sources and in failing to assign specific limitations regarding the use of Nolan's left arm. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and this case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the record, I find that the decision of the Administrative Law Judge ("ALJ") was based on substantial evidence and respectfully recommend that the Commissioner's decision be affirmed.

I. The Legal Framework

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472

(4th Cir. 2012). Instead, the Court asks only whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5)

whether he or she can perform other work. *See* 20 C.F.R. § 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Nolan was born in 1962 (Administrative Record, hereinafter "R." 66, 199, 203), and at the time of the ALJ's decision was considered an "individual closely approaching advanced age" under the Act. 20 C.F.R. § 416.963. He graduated from high school in 1980 and worked as a construction supervisor from 2000 until his alleged onset date. (R. 208.) He alleges that he has been disabled since September 1, 2010, due to injuries to his back, left arm, and left leg stemming from a 1984 motorcycle accident, as well as chest pains, insomnia, anxiety, stress, and depression. (Plaintiff's Brief, hereinafter "Pl. Br." 1–2; R. 60, 203, 207, 239.) After rejecting Nolan's application initially[1] and upon reconsideration, (R. 58, 102, 111), the Commissioner convened a hearing before an ALJ at Nolan's request on April 2, 2012. (R. 72–92.) Nolan was represented by counsel at the hearing, where he and a vocational expert testified. (R. 72–92.)

On April 26, 2012, the ALJ issued his decision finding that Nolan was not disabled. (R. 55–67.) The ALJ found that Nolan had severe impairments of back difficulty and left knee difficulty, but that neither of these impairments met or medically equaled the severity of those listed in 20 C.F.R. part 404, Subpart P, Appendix 1. (R. 60–61.) The ALJ also found that Nolan retained the capacity to perform light work, except that he cannot climb ladders, ropes or scaffolds and cannot kneel, crouch, or crawl. (R. 25.) In reaching his assessment of Nolan's

---

[1] Nolan also submitted an initial application for disability insurance benefits under Title II of the Social Security Act, which was also denied. (R. 93). He did not seek reconsideration of this decision.

residual functional capacity ("RFC"), the ALJ afforded "little weight" to the opinions of Dr. William McCarty, M.D., and physical therapist David Love, but great weight to the opinion of consultative medical examiner Dr. David Boone, M.D. (R. 63–64.) At step four, the ALJ found that Nolan was able to do his past relevant work as a drywall supervisor as he actually performed it, even though that job is typically performed at a medium exertional level. (R. 66.) Although this meant that the ALJ found Nolan not disabled at step four, the ALJ made two alternative findings at step five. First, the ALJ found that Nolan was a younger individual at the time of his application, had a high school education, and was able to communicate in English; therefore, he was not disabled pursuant to the Medical-Vocational Rules, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the grids"). (R. 66.) Second, the ALJ found that Nolan could perform light unskilled work existing in significant numbers in the state and national economies, including lobby monitor, laundry separator, and cafeteria monitor. (R. 66–67.) Accordingly, the ALJ found that Nolan was not disabled under the Act. (R. 67.) The Appeals Council denied Nolan's request to review the ALJ's decision and this appeal followed. (R. 1–5.)

### III.  Discussion

*A.*     *The ALJ's Assessment of the Medical Opinions*

Nolan's first argument on appeal is that the ALJ afforded too much weight to Dr. Boone's opinion and insufficient weight to the opinions of Dr. MacCarty and physical therapist David Love.

*1.*     *Relevant Evidence*

Because Nolan had relatively limited medical records, the state agency considering Nolan's initial application ordered a consultative medical examination by Dr. Boone in order to develop the record. 20 C.F.R. §§ 416.912(e), 416.919a(b)(1); *see also Kersey v. Astrue*, No. 2:08cv00045, 2009 WL 1457694, at *2 (noting that a consultative examination is required when

4

the evidence is insufficient to evaluate the claim). Dr. Boone examined Nolan on January 22, 2011, and submitted his report two days later. (R. 277–81.) Dr. Boone based his report solely on his examination, as he was not provided any of Nolan's paper medical records. (R. 277.)

At the examination, Dr. Boone asked Nolan about his work history. Nolan explained that he had not worked since he left his construction supervisor job in September 2010. Dr. Boone's report indicates that this job involved no lifting, climbing ladders, or "things of that nature," but that Nolan was "just supervising other workers and giving advice mostly, with minimal manual labor." (R. 277.) Nolan explained that the owner of the construction company told him that there was no more work and has not called him in for any more jobs. (R. 277.) Nolan told Dr. Boone that he was not applying for any jobs, "he states because, 'There's no work out there.'" (R. 277.) Nolan explained that he was convinced that there were no jobs available because his friend had been looking for work without success. (R. 277.)

At the examination, Dr. Boone also asked Nolan to describe his medical problems. Dr. Boone noted complaints of mid to low back pain as well as arm and leg stiffness. (R. 278.) Nolan told Dr. Boone that "he was in a motorcycle accident in 1984 that affected shattered bones in his arms and leg and his back has always hurt since then." (R. 278.) Nolan reported that his arm and leg stiffness "is the same as it has always been" and that "[i]t has not worsened acutely in the past years." (R. 278.) Nolan also complained of sharp on-and-off-chest pain. (R. 278–79.) Nolan reported taking only aspirin for his pain. (R. 278.)

Dr. Boone also conducted a physical examination. (R. 279–80.) He described Nolan as "a tall, muscular male," six feet tall and weighing 256 pounds. (R. 279.) Dr. Boone noted that, while Nolan was able to walk without assistance, he limped favoring his left leg. (R. 279–80.) Nolan demonstrated normal range of motion in most joints, but demonstrated limited range of

motion in the left elbow, left thumb and index finger, and left knee. (R. 280.) Specifically, Dr. Boone's examination revealed that Nolan had a range of motion in his left elbow of between 20 to 130 degrees[2] and that he could flex his left thumb and index finger to only 70 degrees.[3] Dr. Boone noted that his left knee was essentially locked into place and was capable of only five degrees of motion between 15 and 20 degrees of flexion.[4] (*Id.*) Nolan's muscle strength was below normal in his left hand and left leg (+4/5), but otherwise normal (+5/5). (R. 280.)

Dr. Boone diagnosed Nolan with mid and low back pain, which "appears unchanged over the course of his history," and arm and leg stiffness, which also did not appear to have changed recently. (R. 280.) Dr. Boone stated that, in his opinion, Nolan could stand and walk six hours and sit six hours in an eight hour work day and lift and carry 20 lbs. occasionally and 10 lbs. frequently. (R. 281.) Dr. Boone identified no manipulative limitations based on Nolan's ability to bend over and pick up a coin and paper clip off the floor, exchange them from hand to hand, and return it to Dr. Boone. (R. 281.) Dr. Boone did note postural limitations, "as [Nolan] is unable to flex or extend the lower extremity very much and does appear to have some loss of coordination

---

[2] Normal range of elbow motion for males aged 45–69 is extension to -0.7 degrees (0 degrees is fully extended) and flexion to 143.5 degrees. Centers for Disease Control and Prevention, *Normal Joint Range of Motion Study*, available at http://www.cdc.gov/ncbddd/jointrom/ (last accessed May 20, 2014).

[3] For fingers, normal range of motion values are 90 degrees of flexion for the metacarpophalangeal joint (the innermost knuckle, at the base of the finger), 120 degress of flexion for the proximal interphalangeal joint (the middle knuckle), and 80 degrees of flexion for the distal interphalangeal joint (the knuckle closest to the fingertip). Merck Manual for Health Care Professionals, *Physical Therapy (PT)*, available at http://www.merckmanuals.com/professional/special_subjects/rehabilitation/physical_therapy_pt.html (last accessed May 20, 2014). For the thumb, normal range of motion values are 70 degrees of flexion for the metacarpophalangeal joint and 90 degrees of flexion for the interphalangeal joint. *Id.*

[4] Normal range of knee motion for males aged 45–69 is extension to 0.5 degrees and flexion to 132.9 degrees. Centers for Disease Control and Prevention, *Normal Joint Range of Motion Study*, available at http://www.cdc.gov/ncbddd/jointrom/ (last accessed May 20, 2014).

using the left upper extremity, likely from deconditioning over the years." However, Dr. Boone noted that "[t]his does not appear to be changed per his own history over the past few years as it has been in the past, but he will likely be unable to climb ladders, stairs, or walk at any great heights as it would be unsafe." (R. 281.)

On August 4, 2011, Nolan saw Dr. MacCarty, "on referral from Joel Cunningham, his lawyer, who is trying to get him disability." (R. 318.) At the examination, Nolan complained of "stiffness in his left knee, [and] pain and weakness in the left wrist and hand." (*Id.*) Dr. MacCarty noted that Nolan was injured in a motorcycle accident in 1984 and that since then he "has had marked disability involving the left upper extremity." (*Id.*)

Dr. MacCarty observed that Nolan had a grossly antalgic gait, decreased back motion, no spinal tenderness, and tenderness in the left sciatic notch. (*Id.*) He also noted "gross stiffness and swelling" in the left knee, "significant[ly]" decreased range of motion in the left wrist, and "gross weakness" and sensitivity in the left hand. (*Id.*) Dr. MacCarty also reviewed Nolan's records, including several x-rays. A left knee x-ray showed "severe advanced tricompartmental degenerative disease" and a left wrist and hand x-ray showed "pantrapezial disease and marked degenerative changes at the wrist joint." (*Id.*) Additionally, lumbar spine x-rays showed decreased disc spaces between the first and second lumbar vertebrae and the fifth lumbar and first sacral vertebrae, as well as anterior lipping "at the first, second, third, and fifth lumbar vertebrae." (*Id.*)

Dr. MacCarty diagnosed degenerative lumbar disc disease and mechanical back pain, as well as severe degenerative disease of the left knee and left wrist and hand. (*Id.*) Dr. MacCarty stated that Nolan "has a 50% permanent physical impairment in his left upper extremity secondary to his problem with the disc and hand and 50% permanent physical impairment of his

7

left lower extremity secondary to his severe degenerative disease about the knee with lack of mobility and also possible left lumbar radiculopathy." Dr. MacCarty indicated that, in his opinion, Nolan "is unfit for any work at this time. It is my opinion that he will not be able to return to work in construction." (*Id.*)

In March 2012, Nolan's attorney referred him to physical therapist David Love for a functional capacity evaluation. In his report, Love noted Nolan's 1984 motorcycle accident and the resulting injuries. (R. 326.) Love explained that, due to knee and back injuries, Nolan is unable to bend over. (R. 326.) Love also noted limited range of motion in Nolan's left knee, as well as stiffness and pain in Nolan's left wrist which rendered Nolan unable "to bend and pick things up on the left side." (R. 326.) Nolan also complained of disruptions in sleep due to his pain. (R. 326–27.) Finally, Nolan reported frequently tripping "due to catching his toes on the [left] side." (R. 327.)

Nolan reported significant functional limitations due to his symptoms. (R. 329–31.) He indicated that he could not sustain sitting or standing for a long period of time and that he had no ability to bend, stoop, kneel, crouch, climb, crawl, lift, carry, push, and pull. (R. 330–31.) Nolan also reported severe limitations in handling and fingering with his left hand. (R. 331.)

Physical examination showed 50% reduction in lumbar spine active range of motion, as well as limited range of motion in the left hip, knee, and wrist. (R. 335, 339.) Otherwise, Nolan's range of motion was within normal limits. (R. 335.) During the examination, Nolan demonstrated the ability to stand and walk as well as to sustain sitting for 10 to 20 minutes. (R. 331.) Nolan performed well below norm on a grip strength test, demonstrating only 45.3 and

11.0 pounds of grip force in his right and left hands, respectively. (R. 337.)[5] Love did not conduct dynamic lifting tests "due to Mr. Smith's [sic] overt pain behaviors and his obvious strength deficits as demonstrated in the grip study." (R. 331.)

Based on his examination, Love indicated that "[Nolan] qualifies for the Sedentary work category." Additionally, Love noted:

> "[Nolan] is not a candidate for the competitive labor market and is disqualified from part time work as well. He lacks the appropriate employability and placeability criteria that would allow him/her access to gainful employment settings as well as to sustain work once a suitable setting was located. This person remains permanently and totally disabled from work given his/her demonstrated inability to negotiate his/her symptoms such that he/she can perform work at a satisfactory productivity level with minimal risk of injury."

(R. 332.)

In his decision, the ALJ considered all three opinions and specified the weight he afforded each one. The ALJ discussed Dr. Boone's report at length and gave it "great weight to the extent that it supports a finding that the claimant is capable of performing light work not requiring climbing, kneeling, crouching, or crawling." (R. 64.)

The ALJ gave little weight to Dr. MacCarty's opinion. The ALJ stated that he thought that Dr. MacCarty's statement that Nolan was unfit for any work contradicted his statement that Nolan would be unable to return to work in construction, "because if the claimant were unfit for any work, it would seem unnecessary to also say that he is unable to return to work in construction." (R. 63.) The ALJ concluded that "[i]t appears that Dr. MacCarty is making a statement considering claimant's prior heavy work in the construction industry." (R. 63.) The ALJ also cited to the lack of specificity in Dr. MacCarty's report and the absence of any functional limitations indicated. (R. 63.) Lastly, the ALJ noted that the stated purpose of Nolan's

---

[5] Average values for the general population are 113.6 lbs. for the right hand and 101.9 lbs. for the left hand. (R. 337.)

9

visit to Dr. MacCarty was "an effort to get [Nolan] disability." (R. 63.) Thus, The ALJ afforded "[l]ittle weight … to his extreme blanket statement, which is otherwise unsupported by his findings." (R. 63.)

The ALJ gave little weight to physical therapist David Love's functional capacity evaluation. (R. 64.) The ALJ explained that Love's findings that Nolan was unable to bend and pick things up and was limited in his ability to walk were inconsistent with the results of Dr. Boone's examination. (R. 63–64.) The ALJ concluded that Love's opinion "is based on the claimant's self-reported limitations and not on his personal observation and findings." (R. 64.) Finally, the ALJ noted that Love "is not a medical doctor and his conclusion, therefore, is not derived from medical findings." (R. 64.)

2. *Analysis*

An ALJ must consider all opinions from "medically acceptable sources," such as doctors, in the case record. 20 C.F.R. § 416.927. In determining what weight to afford a doctor's opinion, the ALJ must consider all relevant factors, including the relationship between the doctor and the patient, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. 20 C.F.R. § 416.927(c).

Opinions from physicians who have treated the patient are generally afforded more weight, because treating sources are "most able to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 416.927(c)(2). Accordingly, an ALJ must give a treating source opinion "controlling weight" to the extent that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 416.927.

The medical professionals whose opinions are at issue in this case did not treat Nolan but merely examined him. Although examining source opinions are not entitled to special weight under the regulations, they are generally entitled to more weight than opinions from non-examining physicians. 20 C.F.R. § 416.927(c)(1); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013); *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010). In weighing medical opinions, the ALJ must consider all relevant factors, including the relationship between the doctor and the patient, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. 20 C.F.R. § 416.927(c).

    *a.*    *Dr. Boone's Opinion*

Nolan contends that the ALJ should not have afforded great weight to Dr. Boone's opinion for several reasons. First, Nolan faults the ALJ for "fail[ing] to look at all the evidence in determining [Nolan's] RFC but rather irrationally adopt[ing] only the summary of Dr. Boone." (Pl. Br. 15.) However, the ALJ's decision demonstrates that he considered the entire record in finding Nolan not disabled. In his decision, the ALJ cited and discussed every important medical exhibit, including the two radiology reports in the record, and considered every relevant opinion. (R. 61–65.)

Next, Nolan contends that the ALJ should have discounted Dr. Boone's opinion because Dr. Boone did not consider x-rays of Nolan's left knee and wrist, a record of a hospital visit where Nolan received morphine injections in his right gluteus, or his weight. (Pl. Br. 15–17.) While "[t]he degree to which [a medical] opinion[] consider[s] all pertinent evidence in [an applicant's] claim" is a factor relevant to weighing a doctor's opinion in a social security disability case, it is not the only factor. 20 C.F.R. § 416.927(c)(3).

11

An x-ray of Nolan's left knee taken on January 11, 2011 showed three rods in his femur, likely surgically inserted after Nolan's 1984 motorcycle accident; "heterotopic ossifications"[6] both of the distal femur and medial to the knee joint; an "irregular appearance" of both condyles[7] of the femur; and "marked narrowing of the patellofemoral compartment … with some soft tissue calcifications."[8] (R. 275.) Another x-ray, taken March 15, 2011, again showed "three postsurgical screws" along with "a tremendous amount of hypertrophic[9] bone formation in the distal femur and degenerative changes of the knee," but "[n]o evidence of acute fracture or dislocation." (R. 296.) That x-ray also showed two "distin[ct] areas of failure" in one of the surgically inserted rods.

However, Nolan does not specify how the x-ray reports are inconsistent with Dr. Boone's findings. Moreover, nothing in the record demonstrates any inconsistency. After a thorough physical examination, Dr. Boone found that that Nolan's left knee was effectively locked between 15 and 20 degrees of flexion. One would not expect a joint with such drastically limited range of motion to look normal on an x-ray. Nevertheless, Nolan was able to work for ten years despite this impairment. Moreover, both Dr. Boone and the ALJ found that Nolan was substantially limited by his impairments, including his knee problem. Specifically, both found that Nolan could perform only light work with numerous postural limitations.

---

[6] Heterotopic ossification is the formation of bone at an abnormal location, secondary to pathology either at the site or elsewhere in the body. *Dorland's Illustrated Medical Dictionary* 1343–34 (32d ed. 2012).
[7] A condyle is a rounded projection at the end of a bone. The femur has two condyles at the knee, the medial condyle on the inside of the leg and the lateral condyle on the outside of the knee. *Dorland's Illustrated Medical Dictionary* 402.
[8] Calcification is the process by which organic tissue becomes hardened by a deposit of calcium salts. *Dorland's Illustrated Medical Dictionary* 269.
[9] Hypertrophia is "the enlargement or overgrowth of an organ or part due to an increase in the size of its constituent cells." *Dorland's Illustrated Medical Dictionary* 898.

Nolan also argues that the fact that he required morphine injections in his left knee in March 2011 "clearly" indicates "a severe injury to the left knee" that is "not consistent with someone who can be on their feet five days a week for six out of an eight hour work day." (Pl. Br. 17). The record indicates that Nolan received one injection of morphine in the right buttocks at Halifax Regional Hospital on March 15, 2011. (R. 293.) Nolan reported to the hospital that day complaining of pain in his left knee after tripping over something in his house two weeks earlier. (R. 292.) The attending doctor diagnosed Nolan with a mild to moderate knee sprain, prescribed ibuprofen and Vicodin, and instructed Nolan to use crutches and wear a knee immobilizing splint until the sprain healed. (R. 292–95.) Thus, the record shows that the morphine injection was for a short-term injury (a sprain) and not for any impairment expected to last at least a year. *See* 20 C.F.R. § 416.909 (to support a finding of disability, an impairment must last or be expected to last for a continuous period of at least 12 months).

Finally, Nolan protests that Dr. Boone never took his weight or vital signs during the consulting examination. (Pl. Br. 16, 20.) The record does not support these assertions. On page three of his report, Dr. Boone noted:

> "VITAL SIGNS: Height was 6 feet 0 inches. Weight was 256 pounds. Blood pressure 202/140. Pulse 96. He was advised to go to the emergency department and have this rechecked and treated if they found fit."

(R. 279.)

In sum, the ALJ did not err in affording great weight to Dr. Boone's report in his decision. Dr. Boone's opinion that Nolan is capable of light work is consistent with the medical records, as well as Nolan's own statements to Dr. Boone that his condition had not changed since he lost his job. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

13

### b. Dr. MacCarty's Opinion

The ALJ's first reason for rejecting Dr. MacCarty's opinion—that Dr. MacCarty seemed to be "making a statement considering some of [Nolan's] prior heavy work in construction"—is confusing and unpersuasive. The ALJ incorrectly labeled Dr. MacCarty's statements that Nolan was "unfit for any work" and "[un]able to return to work in construction" as "contradictory." (R. 63.) These statements do not conflict; rather, as the ALJ subsequently pointed out, the second statement plainly follows from the first. The ALJ regarded the second statement as "unnecessary" and gleaned from its inclusion that Dr. MacCarty was conflating Nolan's ability to work with his ability to do his "prior heavy work in construction." This statement makes no sense in light of the ALJ's later finding that Nolan's past work as a construction supervisor was medium as generally performed and light as he actually performed it. (R. 66.) Even setting aside the ALJ's factual error, this kind of speculation is no reason to reject any medical opinion.

However, the ALJ properly considered the lack of specificity and absence of any functional limitations in Dr. MacCarty's opinion in discounting it relative to Dr. Boone's. Social Security regulations provide that medical sources that explain their opinions and present relevant supporting evidence are entitled to more weight. 20 C.F.R. § 416.927(c)(3). Although Dr. MacCarty's note includes some detailed medical findings, it does not explain how those findings support Dr. MacCarty's conclusion that Nolan is disabled. *See Dunford v. Astrue*, Civ. No. BPG-10-0124, 2011 WL 5513218, at *6 (D. Md. Nov. 10, 2011) (finding that ALJ properly declined to afford great weight to examining physician's opinion, in part because the doctor "failed to address specific functional limitations (such as sitting) to explain why plaintiff would not be able to do sedentary work"); *Shrewsbury v. Astrue*, Civ. No. 1:08-10383, 2010 WL 1380156, at *6 (S.D. W. Va. Mar. 31, 2010) (finding that ALJ adequately explained reasoning for rejecting opinion of psychiatrist who made several diagnoses but "failed to report any functional

limitations resulting from the diagnoses"). Dr. MacCarty's unexplained conclusions stand in stark contrast to Dr. Boone's detailed explanation of his opinion that Nolan could perform light work.

The ALJ also appropriately considered the purpose of Nolan's visit to Dr. MacCarty—generating evidence to support his social security claim. An ALJ may not reject a doctor's opinion that a claimant is disabled solely because the claimant's attorney referred him to that doctor. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *Gonzalez Perez v. Secretary of Health & Human Services*, 812 F.2d 747, 749 (1st Cir. 1987); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1122 n. 8 (6th Cir. 1989) ("There is nothing fundamentally wrong with a lawyer sending a client to a doctor." (citing *Bolling v. Bowen*, 682 F. Supp. 864 (W.D. Va. 1988))). However, an ALJ may consider the manner in which a medical opinion is obtained as a factor in determining the weight to give that opinion. *Sims v. Colvin*, No. 6:12-cv-3332-DCN, 2014 WL 793065, at *13 (D.S.C. Feb. 24, 2014). The ALJ in this case did not "end[] his analysis with his conclusion that [Dr. MacCarty's opinion was an] attorney referred opinion[]," but considered the lack of a treatment relationship between Dr. MacCarty and Nolan as "one factor" in his anaylsis. *Blevins v. Astrue*, No. 1:10-cv-00054, 2012 WL 1038805, at *6 (W.D. Va. Mar. 28, 2012).

Nolan argues that the ALJ should have given more weight to Dr. MacCarty's opinion and less to Dr. Boone's opinion because Dr. MacCarty is an orthopedic specialist[10] and Dr. Boone is not. (Pl. Br. 20.) Opinions of specialists on issues relating to their area of specialty are "generally" afforded more weight than those of non-specialists on the same issues. 20 C.F.R. § 416.927. However, an examining specialist's opinion is not automatically entitled to be

---

[10] The only evidence of this fact in the record is the header at the top of Dr. MacCarty's report that reads, "Southern Virginia Orthopedics."

credited over that of an examining non-specialist. Rather, specialization is just one of many factors that may be relevant in a given case. *See* 20 C.F.R. § 416.927(c).

Although it is true that the ALJ failed to explicitly note that Dr. MacCarty is an orthopedic specialist, that fact does not undermine the valid concerns the ALJ noted with Dr. MacCarty's report, especially Dr. MacCarty's failure to explain how Nolan's medical conditions were disabling.

### c. David Love's Opinion

Nolan argues that the ALJ erred in discounting Love's opinion. (Pl. Br. 19). As the ALJ correctly noted, a physical therapist is not an "acceptable medical source" but an "other source" entitled to significantly less weight under Social Security regulations. 20 C.F.R. § 416.913(d)(1); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). As the ALJ also noted, Love's findings were inconsistent with Dr. Boone's; this inconsistency was reason enough to reject them. *See Craig*, 76 F.3d at 590 (ALJ's failure to expressly consider physical therapist's opinion was not error where the claimant saw the therapist once and where the therapist's findings were contradicted by those of a physician).

Where the ALJ conducts a proper analysis, and the case comes down to "a battle of the experts, the agency decides who wins." *Justice v. Commissioner*, 515 Fed. Appx. 583, 588 (6th Cir. 2013). Here, Dr. Boone concluded that Nolan could work, while Dr. MacCarty and David Love concluded that he could not. Each examined Nolan once and only once. Resolving conflicts between their reports is a job for the Commissioner and her ALJs, not the court. The ALJ here determined that Dr. Boone's opinion should be credited over those of Dr. MacCarty and David Love and gave acceptable reasons for that decision.

B.  *Substantial evidence supports the ALJ's RFC assessment*

Nolan also argues, although with minimal development, that the ALJ erred in failing to find in his RFC assessment that Nolan has limited use of his left arm and hand. Nolan contends that even Dr. Boone's report shows that additional functional limitations in the use of Nolan's left arm were necessary. However, a careful reading of Dr. Boone's report indicates that Dr. Boone did not recommend any specific limitations on the use of the left arm, indicating only that "[Nolan] will likely be unable to climb ladders, stairs or walk at any great heights as it would be unsafe." (R. 281.)

Nolan also argues that other evidence in the record required the ALJ to include manipulative limitations in his RFC assessment. In particular, Nolan points to Dr. MacCarty's statement that Nolan has 50% impairment in his left upper extremity and the physical therapist's statement that Nolan's capacity for reaching was "Restrictive – Accommodation Required." (Pl. Br. 18.) Nolan also points to x-rays of his left wrist, which showed:

> Degenerative changes present in the distal radius and ulna. On lateral projection there is a deformity of the wrist with more volar angulation present. There are also degenerative changes present at the base of the thumb metacarpal bone. There is also a deformity and heterogeneous appearance of the thumb proximal phalanx. Mild soft tissue edema in the dorsum of the wrist is present.

(R. 275; Pl. Br. 18.) Reviewing this x-ray, Dr. MacCarty noted "pantrapezial disease and degenerative changes at the wrist joint." (R. 318.)

As noted above, the ALJ afforded little weight to Dr. MacCarty and Dr. Love's opinions. Moreover, Dr. MacCarty failed to identify any functional limitations resulting from Nolan's left arm and hand injuries. *Cf. Fricker v. Commissioner*, No. 4:11cv00005, 2011 WL 4381483, at *3 (W.D. Va. Sept. 21, 2011) (finding that an ALJ properly rejected a treating psychiatrist's opinion that a plaintiff was disabled where "the psychiatrist failed to identify a single functional

17

limitation imposed by plaintiff's mental impairments"). Thus, these opinions do not undermine the ALJ's decision not to include manipulative limitations in his RFC assessment.

Nor does the radiological evidence require a different conclusion. Neither the radiology report nor Dr. MacCarty's diagnosis based on it identifies or suggests any manipulative limitations. Moreover, Dr. David C. Williams, M.D., the state agency physician who reviewed Nolan's initial application, noted the wrist x-rays, including the degenerative changes, but declined to find any limitation on the use of his arms or hands beyond restrictions on climbing ladders and ropes. (R. 106, 108.)

Finally, Nolan's own statements and testimony lend further support to the ALJ's decision. For example, Nolan faults the ALJ for imposing no limitations on overhead reaching, repetitive use of the left arm, or extension of the left arm. (Pl. Br. 19). However, at the hearing, Nolan testified that he could in fact reach over his head with his left arm. (R. 81.) Nolan also stated that he could lift a gallon of milk[11] with his left arm, albeit using two fingers. (R. 81–82.) Furthermore, Nolan indicated in his application materials and told Dr. Boone that he stopped working not because of his injuries, but because he was laid off. (R. 207, 277–78.) Nolan told Dr. Boone that his condition had not significantly changed since the time he was working. (R. 277–78.) Nolan reported to state agency staff that his job as a dry wall supervisor involved scheduling, going to meetings, making phone calls, and sometimes ordering materials, tasks which required no physical labor or activity beyond occasionally walking between his truck and

---

[11] A gallon of milk weighs roughly 8.6 lbs. *See* Charrondiere, Haytowitz & Stadlmayr, FAO/InFOODS Density Databases Version 2.0, at 10 (2012), available at http://www.fao.org/docrep/017/ap815e/ap815e.pdf (last accessed May 20, 2014) (density of milk ranges from 1.030 to 1.036 g/ml).

a job site. (R. 286.) On this record, the ALJ's RFC assessment and his conclusion that Nolan could return to his past work as a dry wall supervisor were supported by substantial evidence.

IV. Conclusion

Based on this record I find that substantial evidence supports the Commissioner's decision. Accordingly, I respectfully recommend that Nolan's motion for summary judgment be DENIED, the Commissioner's motion for summary judgment be GRANTED, and the final decision of the Commissioner be AFFIRMED.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: May 21, 2014

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge